# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT MORRIS, | |
| Plaintiff, | |
| v. | Case No. 23-cv-3302-NJR |
| ERIC EVANS, CALEB ZANG, BRADLEY SADLER, MAYNARD AGNE, ANDREW STORY, LEVI GAETZ, MICHAEL LAMINACK, JASON MORRIS, and PHILIP ROYSTER, | |
| Defendants. | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Robert Morris, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Morris alleges Eighth Amendment excessive force and cruel and unusual punishment claims against correctional officers who allegedly sprayed him with pepper spray, beat him, and placed him in a cell contaminated with chemical agents (Doc. 17).

This matter is currently before the Court on Morris's motion for preliminary injunction (Doc. 29) seeking either a transfer or an order keeping the defendants away from Morris due to their retaliation and harassment. Morris submitted additional allegations regarding Defendants' actions in his motion to appoint counsel (Doc. 31). He

also filed a supplement to his original motion for preliminary injunction (Doc. 39). Defendants have filed a response (Docs. 42, 43).

## FACTUAL BACKGROUND

On October 6, 2023, this case was severed from *Morris v. Jeffreys, et al.*, Case No. 23-cv-1162-DWD (Docs. 1-3). After a review of the claims in this case, Morris was ultimately allowed to proceed on the following counts:

> Count 1: Eighth Amendment excessive force or cruel and unusual punishment claim against Defendants Philip Royster, Eric Evans, Caleb Zang, Bradley Sadler, Maynard Agne, Andrew Story, Levi Gaetz, Michael Laminack, and Sergeant Jason Morris for releasing pepper spray on April 4, 2022.
>
> Count 3: Eighth Amendment excessive force or cruel and unusual punishment claim against Defendants Sadler, Story, Gaetz, Laminack, Sergeant Morris, and Agne for allegedly beating Morris on April 4, 2022, after removing him from the healthcare unit, and for then placing him in a cell contaminated with chemical agents.

(Doc. 17, pp. 3-4).[1]

### A. The Complaint

Morris's Complaint alleges that on April 4, 2022, all of the defendants deployed pepper spray on inmates who were on a hunger and water strike, including Morris (Doc. 17, p. 2). Their actions caused Morris to panic and suffer chest pains (*Id.*). Although he was transported to the healthcare unit for care, after being released, Defendants Sadler, Story, Gaetz, Laminack, Sergeant Morris, and Agne escorted Morris to a secluded area

---

[1] Morris's claim in Count 2 against a medical official for her unprofessional tone and demeanor while treating Morris was dismissed for failure to state a claim (*Id.* at p. 3).

where they beat him. They then returned Morris to his original cell, which was still contaminated with pepper spray (*Id*.).

### B. Morris's Motion and Supplemental Briefs

In his motion for preliminary injunction (Doc. 29), Morris alleges that he recently faced harassment from the defendants and other staff at Menard. Specifically, he alleges that from May to July 2024, Gaetz made verbal threats, noting that Morris's "time to die [was] coming very soon" (Doc. 29, p. 1). On August 25, 2024, Internal Affairs Officer Hempen informed Morris that his supervisor, Ottenmeier, directed him to place Morris in segregation for a "petty disciplinary report" (*Id*.). Morris was then placed in a filthy crisis watch cell (*Id*.). Morris alleges that he overheard staff say that he was going to die because he filed lawsuits against them. Morris alleges that mental health staff, who are defendants in other lawsuits Morris has filed in this court, directed staff not to evaluate Morris during their rounds (*Id*.). Morris remained in the filthy cell through August 30, 2024 (*Id*.).

Morris alleges that in late August he also heard staff say that "Major Rowland" was calling other staff members, including Royster, Agne, and Evans, and telling them not to provide Morris with ice during a heatwave (*Id*. at p. 2). Morris contends that video footage will show Correctional Officer Baker refusing to give Morris ice. Morris attempted to call for help, but his cell lacked an emergency call button (*Id*. at p. 2). On August 31, 2024, a mental health staff member, referred to as "Ms. S," walked past Morris's cell with Agne and Correctional Officer Hancock. Ms. S informed Morris that all staff wanted to keep Morris on crisis watch regardless of his behavior (*Id*.). When Morris

3

inquired as to the identity of the officer who told Ms. S about Morris, Agne admitted to telling Ms. S about Morris. Agne then taunted Morris, telling him to take his smock off so that Agne could see his genitals (*Id.*). On September 2, 2024, another mental healthcare official, Ms. Nicholson, told Morris that he was not coming off crisis watch, nor would he receive showers or soap (*Id.*). Morris alleges that he had an "outbreak" on his face, arms, penis, and kneecap but he was unable to receive help from numerous nurses (*Id.*). Also on September 2, security officers told Morris that all defendants in his civil cases said that he would not receive his property or legal property (*Id.* at p. 3). The officers also told him that staff wanted to kill him. They also informed Morris that he would not receive any paperwork because there was a drug problem at the prison and papers were being laced with fentanyl (*Id.*).

After filing his motion for injunctive relief, Morris submitted a motion seeking the appointment of counsel that also included additional allegations of harassment (Doc. 31). Morris alleged that he was in the process of trying to file a response to the pending motion for summary judgment but felt that defense counsel and the defendants were obstructing his efforts. He reiterated that he was not allowed access to any of his legal documents due to a drug epidemic at the prison (*Id.* at p. 1). He also noted that he had sores and rashes on his body due to being housed in a filthy cell as a result of filing his lawsuit. He noted his current cell was infested with vermin, smeared with feces, urine, and blood, and still had the remnants of pepper spray in it (*Id.* at p. 2). He also attached a statement from Inmate Devin Seats who noted that he was in the cell next to Morris (*Id.* at p. 3). Seats stated that he heard several staff mistreat Morris and other inmates on crisis watch.

4

Specifically, Seats overheard Morris say that he had rashes on his skin due to the conditions in his cell (*Id.*).

Morris submitted a second motion for preliminary injunction (Doc. 39), which restated many of the allegations in his original motion. He again alleged that security staff wrote a disciplinary report against him and placed him on crisis watch (*Id.* at p. 1). Morris alleged that on August 25, 2024, he was escorted to the North 2 Housing Unit where he met Maynard Agne (*Id.*). Agne spit in his face and directed him to strip (*Id.*). Morris alleges that he was then beaten by Agne and placed into a filthy cell on 5 Gallery (*Id.* at p. 2). Morris again stated that on August 31, 2024, Agne made rounds with Ms. S (*Id.*). Morris tried to complain about his living conditions to no avail (*Id.*). He tried to complain about the conditions of his cell and his rash to numerous mental health staff and medical staff but his requests were ignored (*Id.*).

On September 5, 2024, Morris was escorted to the North 2 Infirmary and met with mental health staff member "Mr. B" who started the process of releasing Morris from crisis watch (*Id.* at pp. 2-3). He alleges that during the assessment he saw Joshua Schoenbeck, who threatened him and told him he was going to die at Menard (*Id.* at p. 3). Morris was then sent to another mental health staff member who started a mental health assessment but was interrupted. He saw a medical technician for his rash and was provided cream, but security staff would not let him have the cream (*Id.*). He was then escorted back to his cell on 5 Gallery (*Id.*).

On September 6, 2024, Morris alleges that he was subjected to a "statewide shakedown" in his cellhouse (*Id.* at p. 3). As members of the tactical team, Royster, Evans,

and Agne were present during the shakedown (*Id*.). Royster, Evans, and other tactical team members entered Morris's cell and attacked him. Morris alleges that they beat him and confiscated his legal documents (*Id*.). They also sprayed mace into his cell (*Id.*). The following day, Sergeant Bamy and other security staff deployed pepper spray on another individual and the spray leaked into Morris's cell (*Id*. at p. 4). Officers refused to open any windows to clear the spray from the gallery.

### C. Defendants' Response

In response to Morris's motion and supplemental briefs, Defendants argue that Morris is not entitled to injunctive relief. Specifically, they argue that Morris's allegations in his motion are not factually related to his underlying claim, that he lacks a likelihood of success on the merits of his claims, that he already has limited contact with the defendants, and he has not shown a likelihood of irreparable harm.

Defendants Maynard Agne, Eric Evans, Levi Gaetz, and Philip Royster submitted affidavits specifically denying that they ever harassed Morris or used excessive force against him (Docs. 43-2, 43-3, 43-5, 46). As to Morris's claim that Gaetz made threatening statements on numerous occasions from May to July 2024, Gaetz denied those allegations. In a signed affidavit, Gaetz noted that he is a lieutenant at Menard (Doc. 46, p. 4). As a lieutenant, he spends a limited amount of time directly interacting with the inmates (*Id*.). He is also held to a higher standard, acts a leader, and would not harass an inmate because it would only cause conflict (*Id*.). He denied harassing Morris or stating that it was Morris's time to die (*Id*. at p. 5).

6

Officer Marc Hempen, who is not a party to this lawsuit, also offered his testimony as to his interactions with Morris (Doc. 43). Hempen is an officer in the Internal Affairs Department at Menard (*Id.* at p. 1). On August 25, 2024, Morris presented to property and brought a television that had been stripped of parts (*Id.*). Items were taken from the television including the circuit board, plastic framing, screen, and metal inside the case (*Id.* at pp. 1-2). Hempen was notified of the incident because one of his responsibilities is investigating potential contraband, and missing pieces from the television could be considered contraband. After reviewing the damage to the television, Hempen wrote Morris a disciplinary report for contraband and for damage or misuse of property (*Id.* at p. 2; Doc. 43-1, pp. 3-4). He also searched Morris's cell and discovered more contraband, including a television circuit board, several screws, fan bolts, a homemade soldering device, and a sharpened needle. All of these items, except the needle, were located in Morris's cellmate's property box, but the needle was found in Morris's phone book (Doc. 43, p. 2). Morris received a second ticket for the confiscated needle (Docs. 43, p. 2; 43-1) Morris's cellmate also received a disciplinary report (Doc. 43, p. 2). Hempen noted that he does not have a supervisor named Ottenmeier, although he believes that there is an Officer Ottenmeier in Intel, not Internal Affairs (*Id.* at p. 3). Hempen denied conspiring with anyone when he issued the disciplinary ticket.

Hempen states that he did not transfer Morris to segregation after writing him the disciplinary tickets. Although Agne acknowledged that he was assigned to the North 2 Cellhouse, he testified in an affidavit that he did not recall seeing Morris when he arrived at the North 2 Infirmary (Doc. 43-2, p. 1). He denied spitting in Morris's face or

7

participating in the strip-search. Although Agne acknowledged that inmates are strip-searched upon arriving at restrictive housing, the escorting officers are responsible for strip-searching the inmate (*Id*. at pp. 1-2). All inmates are also interviewed by mental health staff and they made the decision to send Morris to crisis watch (*Id*. at p. 2). The medical records from that date note that Morris presented to the infirmary for restrictive housing placement and denied any complaints (Doc. 43-7, p. 8).

Agne stated in his affidavit that crisis watch is on another gallery, and he does not work on that gallery. He did not escort Morris to his cell, nor did he use any force against Morris on that day (*Id*.). Agne also did not see Morris's assigned cell, although he noted that cells are regularly cleaned after an individual is removed from the cell (*Id*.). In addition to Agne, Eric Evans, Philip Royster, and Levi Gaetz also denied that they were assigned to Morris's gallery (Docs. 43-3, p. 1; 43-5, p. 1; 46, p. 1). Evans is a shower officer for even numbered galleries (Doc. 43-3, p. 1), Philips is in receiving (Doc. 43-5, p. 1); Gaetz is a lieutenant currently assigned to East Cell House (although he acknowledged being assigned all over the prison at any given time) (Doc. 46). Morris was placed in North 2, 5 Gallery. None of the defendants were assigned to that specific gallery.

As to Morris's complaints that he was refused ice during a heatwave, Agne noted that he was not assigned to Morris's gallery and had no control over whether the officer on Morris's gallery served ice to him (*Id*. at p. 3). Evans agreed that it would be up to Morris's gallery officer as to whether he received ice on hot days (Doc. 43-3, p. 2). Agne, Evans, and Royster noted that Major Rowland had not worked at Menard in over

8

18 months, nor had any other supervisor instructed them to mistreat Morris (Docs. 43-2, p.3; 43-3, p. 2; 43-5, p. 1).

Agne did acknowledge escorting a female mental health professional through the gallery on August 31, 2024 (*Id*. at p. 3). He was temporarily assigned as a sergeant and escorted the mental health professional through the restrictive housing unit with another officer, Officer Hancock, per prison protocol (*Id*.). Agne denied speaking with Morris on that date. He also denied informing Morris that he would remain on crisis watch because Agne does not have the authority to place or remove an inmate from crisis watch (*Id*.). He denied ordering Morris to remove his smock (*Id*.).

Both Royster and Gaetz acknowledged that mail at Menard has recently been slowed due to unidentified substances being found in the mail (Docs. 43-5, p. 2; 46, p. 5). But both officers acknowledged that mail is still being delivered to inmates (*Id*.). Royster noted that when Morris was on crisis watch his access to his belongings could be restricted per prison protocol (Doc. 43-5, p. 2). Defendants denied ever telling Morris that he would not have access to the courts (Docs. 43-2, p. 4; 43-4, p. 2; 43-5, p. 2).

Defendants did acknowledge that on September 6, 2024, there was a statewide shakedown of the prison, and all of the cells were searched (Docs. 43-2, p. 2; 43-3, p. 2; 43-5, p. 2). The shakedown involved 150-200 correctional officers and was filmed. Agne denied that he was involved in the search of Morris's cell and also denied seeing Evans or Royster during the shakedown (Doc. 43-2, p. 4). Evans acknowledged that he participated in the statewide shakedown and that Royster was his squad leader (Doc. 43-3, p. 2). He denied seeing Agne during the search. Evans denied searching Morris's cell.

9

Instead, per protocol, Morris was removed from his cell and instructed to stand across the gallery facing the wall during the search of his cell (*Id*. at p. 2). Evans stood near Morris during the search as required by protocol (*Id*.). Although he did not recognize Morris at first, when he did recognize that it was Morris's cell being searched, he had another officer take his place (*Id*. at p. 3). Evans stated that he did not interact with Morris, did not enter his cell, and did not use force against Morris (*Id*.). He stood near Morris for less than five minutes (*Id*.).

Royster also acknowledged being Evans's squad leader but did not recall specifically searching Morris's cell (Doc. 43-5, p. 2). He stated in his affidavit that as a squad leader, he generally directs and coordinates his squad members and does not personally conduct the searches (*Id*.). Royster denied that he entered Morris's cell with Evans as there are usually three officers in the cell during a search, not two (*Id*. at p. 3). He denied using force against Morris or spraying a chemical agent. Both Royster and Evans noted that if force had been used, there would have been an Incident Report written for the use of force (Docs. 43-3, p. 3; 43-5, p. 3).

After being removed from crisis watch, the records show that Morris was assigned to North 2, 7 Gallery (Doc. 43-6). Neither Agne nor Evans were assigned to that gallery (Docs. 43-2, p. 1; 43-3, p. 1). On September 20, 2024, Morris was released from restrictive housing (Doc. 43-6).

## LEGAL STANDARDS

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*,

10

520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once a plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

## ANALYSIS

Simply put, the Court finds that a preliminary injunction is not warranted at this time. Although Morris alleges that he is being continually harassed, citing events which took place from May through September 2024, the majority of his allegations do not involve the named defendants in this case. Instead, he alleges that Internal Affairs Hempen issued him a "petty" disciplinary report which caused him to be placed in restrictive housing and then crisis watch. But Hempen is not a defendant in this case. Morris also identifies a number of nurses and mental health professionals who failed to provide him with proper care, but these staff members are also not parties to this lawsuit. Finally, Morris refers generically to "staff" and identifies other officers by name who are not defendants in this case. His supporting statement from Inmate Devin Seats also does not identify any of the defendants in this case; Seats merely indicates that "several staff" have mistreated Morris (Doc. 31, p. 3). To the extent that Morris alleges that these new individuals are harassing him, using excessive force, or retaliating against him, these are new claims which are unrelated to the current claims in this lawsuit. In order to pursue these claims, Morris would need to file a new lawsuit after first exhausting his administrative remedies.

Morris does allege that some of the defendants, including Levi Gaetz, Eric Evans, Philip Royster, and Maynard Agne harassed him in recent months. But even these allegations appear unrelated to the allegations in his lawsuit. Morris's Complaint focuses on a single incident in April 2022 when correctional officers allegedly released pepper spray on inmates taking part in a hunger strike and then beat Morris after he sought

12

medical care. But the allegations in his motion and supplement refer to random encounters with Gaetz in May through July 2024 and interactions with Evans, Royster, and Agne while on crisis watch in August and September 2024. The allegations also allege retaliation and harassment, which are factually different and legally distinct from his excessive force claims in this case. Although there appear to be some allegations of excessive force against Agne and Evans, those allegations took place over two years after the claims in this case. Thus, these allegations are new allegations, unrelated to the claims in this case.

Further, Morris offers very little evidence to support his claims that Defendants were involved in his treatment while on North 2, 5 Gallery. The defendants submitted affidavits indicating that they were not assigned to Morris's gallery while he was there. None of them saw the conditions of his cell. Nor would they have been involved in the decision to pass out ice on hot days. Although Morris alleges that Defendants were involved in denying him ice, his only evidence is that that he overheard "staff" state that Major Rowland was talking to past co-workers and directing them to mistreat Morris (Doc. 29, p. 2). Rowland does not work at the prison and is not a defendant in this case. Further, Morris fails to offer any evidence that any of the defendants worked on his gallery or were involved in decisions regarding his access to items such as ice, mail, and legal documents. This is also no evidence in the record to suggest that any of the defendants were involved in Morris's placement in restrictive housing or on crisis watch.

Defendants acknowledge some interaction with Morris but deny that they harassed him or caused him any harm. They acknowledge that there was a statewide

13

shakedown of Menard that included Morris's cell but deny that they physically attacked him during that shakedown. The officers note that there would have been an incident report issued if physical force was used, but Morris fails to point to any report or other evidence of an assault (Doc. 43-3, p. 3). Agne acknowledges encountering Morris when he first entered restrictive housing and when he escorted a mental health staff member through the cellhouse, but he denies ever spitting on Morris or making inappropriate comments. Even if true, these incidents appear to be isolated and unrelated to the claims in this case. To the extent that Morris wishes to pursue these claims, he would have to file a new lawsuit.

Finally, the Court notes that a preliminary injunction is not warranted in this case because Morris is no longer housed in restrictive housing where Evans, Agne, and Royster are assigned. In order to obtain a preliminary injunction, a plaintiff must show that irreparable harm is likely; "there must be more than a mere possibility" of future harm. *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 788 (7th Cir. 2011). On September 10, 2024, Morris was released from crisis watch. On September 20, 2024, he was released from restrictive housing and placed in East Cellhouse (Doc. 43-6). Evans, Agne, and Royster are not assigned to that cellhouse. Gaetz is assigned throughout the prison and is sometimes responsible for the whole East Cellhouse (Doc. 46, p. 5), but there is no indication that he has had any interactions with Morris since July 2024. And as a lieutenant over the entire cellhouse, he has very limited time to spend with any one prisoner (*Id*. at p. 1). There is simply no evidence to suggest that Morris is likely to have any interactions with the named individuals. And there is no evidence to suggest that

14

Morris will suffer irreparable harm without the keep separate order he seeks because he already has very little, if any, interaction with the named officers. Thus, Morris is not entitled to the injunctive relief he seeks.

## Conclusion

For the reasons stated above, Morris's motion for preliminary injunction (Doc. 29) is **DENIED**.

**IT IS SO ORDERED.**

DATED:  November 25, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**