IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT MORRIS,<br><br>     Plaintiff,<br><br>v.<br><br>ERIC EVANS, CALEB ZANG,<br>BRADLEY SADLER, MAYNARD<br>AGNE, ANDREW STORY, LEVI<br>GAETZ, MICHAEL LAMINACK,<br>JASON MORRIS, and<br>PHILIP ROYSTER,<br><br>     Defendants. | Case No. 23-cv-3302-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Robert Morris, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Specifically, Morris alleges Eighth Amendment excessive force and cruel and unusual punishment claims against correctional officers who allegedly sprayed him with mace, beat him, and placed him in a cell contaminated with chemical agents.

This matter is currently before the Court on a motion for summary judgment filed by Defendants Maynard Agne, Eric Evans, Levi Gaetz, Michael Laminack, Jason Morris, Philip Royster, Bradley Sadler, Andrew Story, and Caleb Zang (Doc. 25). With their motion, Defendants filed a notice advising Morris that his failure to respond to the motion could result in a judgment in their favor (Doc. 26). Morris initially requested additional

time to file a response, as well as the assignment of counsel due to his limited access to the law library (Doc. 27). But the Court found Morris capable of responding to the motion on his own by indicating his attempts to exhaust his claims through the grievance process (Doc. 28). He was granted additional time to file a response.

One month after the extended deadline, Morris again asked for counsel and additional time to respond to the motion (Doc. 31).[1] Morris alleged that he was placed on crisis watch without access to his property, lacked access to the law library, and was denied access to legal documents because of a drug epidemic at the prison (*Id.*). The Court again found Morris capable of responding on his own, noting that he was only required to explain the steps he took to exhaust his claims (Doc. 32). Because of issues with lockdowns and access to his materials, he was granted additional time, until October 21, 2024, to respond to the pending motion (*Id.*). He was later granted another extension, until to December 2, 2024, to file a response (Doc. 45). As of this date, Morris has failed to file a response.

---

[1] Morris also filed a motion for injunctive relief seeking a transfer because he argued that Defendants continued to harass him and deny him access to his legal materials in retaliation for his lawsuit (Doc. 29). His motion was ultimately denied because his allegations involved individuals who were not defendants in the case and events that were unrelated to the claims in this case (Doc. 48).

**FACTUAL BACKGROUND**

Morris's claims in this case were severed from his original claims in *Morris v. Jeffreys, et al.*, Case No. 23-cv-1162-DWD (Doc. 1). After review of the severed claims pursuant to 28 U.S.C. §1915A, Morris was allowed to proceed on the following counts:

Count 1:   Eighth Amendment excessive force or cruel and unusual punishment claim against Defendants Philip Royster, Eric Evans, Caleb Zang, Bradley Sadler, Maynard Agne, Andrew Story, Levi Gaetz, Michael Laminack, and Jason Morris for releasing pepper spray on April 4, 2022.

Count 3:   Eighth Amendment excessive force claim or cruel and unusual punishment claim against Defendants Sadler, Story, Gaetz, Laminack, Morris, and Agne for allegedly beating Morris on April 4, 2022, after removing him from the healthcare unit, and for then placing him in a cell contaminated with chemical agents.

(Doc. 17, p. 3).

Morris alleges that Defendants took turns spraying pepper spray on inmates, including Morris, who took part in a hunger and water strike (Doc. 17, p. 2). During the assault, Morris suffered a panic attack and was transported to the healthcare unit (*Id.*). After his release back to the unit, Defendants Sadler, Story, Gaetz, Laminack, Morris, and Agne took Morris to a secluded area and beat him (*Id.*). They then returned him to his cell, which had not been decontaminated from the pepper spray (*Id.*). He was forced to remain in the cell for several days.

Morris filed one grievance regarding his claims. The grievance, dated April 24, 2022, described the events in his Complaint.

**April 24, 2022 Grievance (#253-4-22):**

On April 24, 2022, Morris submitted an emergency grievance about the April 4, 2022 incident. The grievance indicated that on April 4, while on a hunger strike in crisis watch, two officers came to Morris's door and asked if he wanted to see mental health or medical staff (Doc. 25-1, p. 121). Morris informed the officers that he could not feel his legs and he had pains in his heart for several days (*Id.*). The sergeant on duty directed him to leave the cell and threatened to spray Morris (*Id.*). Morris informed the sergeant that his actions would amount to cruel and unusual punishment. The sergeant then maced Morris for 11 seconds, causing Morris to hyperventilate and experience pain in his chest (*Id.* at pp. 121-122).

Morris noted in his grievance that he passed out. He later learned that while unconscious, two lieutenants tried to wake him, but he remained unresponsive. The major was notified, and a tactical team was brought in. Those officers then ordered Morris to get up, but he remained unconscious. He was then sprayed again by the officers (*Id.*). An officer then jumped on him, and he was dragged out of his cell and placed in a wheelchair (*Id.*).

Morris's grievance alleged that he was taken to the healthcare unit where he received an EKG (*Id.* at p. 122). After being released from the healthcare unit, Morris alleged that he was wheeled back to his unit and beaten by officers. He was then placed back in his mace contaminated cell (*Id.*). Morris requested a transfer to another prison, additional medical care including an MRI, medication for muscle spasms, and monetary compensation (*Id.* at p. 121).

On April 24, 2022, Morris submitted his grievance as an emergency (Doc. 25-1, p. 121). On April 26, 2022, the warden marked it as an emergency and forwarded the grievance to the grievance officer. On April 27, 2022, the grievance officer reviewed Morris's grievance (*Id.* at p. 119). The grievance officer noted that Internal Affairs opened an investigation regarding the incident. On May 12, 2022, the grievance officer contacted the major in North 2 where Morris was housed and inquired about his living conditions. The major asked Morris about the status of his cell and Morris noted there was nothing currently wrong with his cell or his living conditions (*Id.* at p. 120). The grievance officer ultimately denied Morris's grievance as moot (*Id.* at p. 119). On May 13, 2022, the Chief Administrative Officer ("CAO") received the grievance and on May 18, 2022 he concurred with the decision (*Id.*). On May 18, 2022, the grievance was returned to Morris through the institutional mail (Doc. 25-2, p. 13).

On either May 18 or 19, 2022, Morris marked his grievance as being appealed to the Administrative Review Board ("ARB") (Doc. 25-1, p. 119). The date is not entirely clear (*Id.*). [2] The ARB received the grievance on June 30, 2022. On July 8, 2022, ARB officer Margaret Madole submitted an email to Menard's Internal Affairs Coordinator inquiring about the status of the investigation into Morris's claims (*Id.* at p. 118). Menard's Internal Affairs Coordinator responded that the investigation was closed, and Morris's claims were unsubstantiated (*Id.*). The coordinator noted that force, in the form of chemical spray, was used to gain compliance and extraction from the cell after Morris claimed he could not use his legs when he previously had been able to walk (*Id.*). Although the ARB investigated the grievance, Madole ultimately determined that the grievance would not be addressed because it was received 30 days after the CAO signed off on the grievance (*Id.* at p. 117). Madole noted, however, that due to the nature of the grievance she went ahead and verified that the Internal Affairs investigation was completed and the claims unsubstantiated.

## LEGAL STANDARDS

"Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the defendant] is entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement.

---

[2] Morris signed the grievance and noted the date, but only the "1" is legible (Doc. 25-1, p. 119).

5

*Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008), the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if

>there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

### A. Illinois Exhaustion Requirements

As an IDOC inmate, Morris was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claim. 20 Ill. Administrative Code §504.800 *et seq.* The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

>contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer ["CAO"] within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The [CAO] shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified

8

in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## ANALYSIS

Morris was provided with notice of the summary judgment motion and informed of the consequences of failing to respond to it (Doc. 26). Morris also was advised that his failure to respond could amount to an admission of the facts asserted in Defendants' motion (*Id.*). Although Morris sought several extensions of time to file a response to the summary judgment motion, Morris ultimately failed to do so.

Pursuant to SDIL Local Rule 56.1(g) "all material facts…shall be deemed admitted for purposes of summary judgment unless specifically disputed." Because Morris failed to respond to Defendants' statement of facts, the Court accepts the statement of facts as true. *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010) (citing *Cracco v. Vitran Exp. Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)).

The admission of the material facts, however, does not mean that the Court can automatically grant Defendants' motion for summary judgment; they must still demonstrate that they are entitled to judgment as a matter of law. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). And here, Defendants have failed to do so.

Defendants do not dispute that Morris filed a timely grievance. They only dispute that Morris fully exhausted that grievance with the ARB because the grievance was received by the ARB more than 30 days after the CAO's final ruling on the grievance.

9

IDOC's inmate grievance procedures require that "the appeal must be received by the [ARB] within 30 days after the date" of the CAO's decision. 20 Ill. Admin. Code §504.850(a). The CAO signed his concurrence on May 18, 2022, and the counseling records indicate that the grievance was placed in the institutional mail for return to Morris on the same date (Doc. 25-1, p. 119; Doc. 25-2, p. 13). Morris received the grievance either the same date or the following date and immediately marked the grievance for appeal to the ARB (Doc. 25-1, p. 119). The ARB received the grievance on June 30, 2022. Thus, Defendants argue that the grievance was procedurally deficient because it was not timely received and returned as unexhausted.

Although the grievance was not "received" by the ARB until June 30, 2022, Defendants fail to point to anything in the record suggesting that Morris failed to submit his grievance to the ARB in a timely fashion. Morris marked the grievance for appeal on either May 18 or 19, less than a day after he received the grievance back from the CAO. There is simply nothing in the record indicating that Morris waited to send the grievance to the ARB after marking it for appeal. Based on the markings on Morris's grievance, he submitted the grievance in the prison mail either on May 18 or 19, or shortly thereafter. *Conley v. Anglin*, 513 F. App'x 598, 601 (7th Cir. 2013) ("And though the defendants would like us to presume that [Section] 504.850 and the ARB's own procedures do not recognize the 'mailbox rule,' they offered no support (and still don't) for the proposition."); *Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006) (holding prisoner had filed a timely appeal to the ARB by placing it in the prison mail system even though it was never received by the ARB). Morris submitted the grievance in a timely fashion, allowing enough time for it to

10

be received within the 30 days required by the administrative code. He had no control over the mail system and did all that he could to submit the grievance in a timely fashion. Defendants fail to demonstrate otherwise. Thus, the grievance was timely submitted and should not have been rejected by the ARB as untimely.

Further, it appears that the ARB *did* review Morris's grievance on the merits. Despite returning the grievance to Morris on a "return of grievance" form, ARB officer Margaret Madole also reviewed and responded to the merits of Morris's grievance. In fact, she emailed Menard Internal Affairs to inquire as to the status of the investigation into Morris's claims against the officers. Based on that inquiry, Madole noted on the return of grievance form that the investigation was completed and the claims were deemed unsubstantiated (Doc. 25-1, p. 117). Thus, Madole provided Morris with a ruling on the merits of his claims and there was nothing further for Morris to do to exhaust his claims. The Court finds that under these circumstances, Morris's grievance was fully exhausted.

In addition to arguing that Morris failed to adequately exhaust his April 2022 grievance, Defendants also argue that the grievance failed to properly identify Lieutenant Zang and failed to identify any of the defendants as to the claim in Count 3. Defendants acknowledge that Morris's grievance refers to two security officials, a sergeant, and tactical team members who could arguably be identified as Evans, Royster, Agne, Gaetz, Laminack, Morris, Sadler, and Story (Doc. 25, p. 7). Defendants argue, however, that the grievance lacks any allegations that would suggest the involvement of Caleb Zang.

11

But Defendants acknowledge that Zang was a lieutenant at the time, was present at Morris's cell during the incident, attempted to obtain compliance from Morris, and called the de-escalation response team (Doc. 25, p. 4).[3] Further, Morris's grievance refers to numerous officers who were present during his cell extraction, including two lieutenants (Doc. 25-1, p. 122). He also noted that there was video footage of the incident (*Id.*). Although Morris may not have referred specifically to Lieutenant Zang, exhaustion is not intended to provide individual notice to each prison official who might later be sued; it is designed to provide the prison with notice of the problem and give them an opportunity to fix it. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). As such, an inmate must provide enough information to serve the grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox*, 655 F.3d at 722. Morris's grievance clearly gave officials notice of his claims against all officials involved, including lieutenants that were present, and directed officials to video footage of the incident. There was enough information in the grievance to put officials on notice that Morris was complaining about the actions of Lieutenant Zang during the incident. Further, the prison clearly investigated the incident and obtained a statement regarding Zang's involvement (although Defendants failed to attach that portion of the

---

[3] Defendants point to Exhibit B, Bates 000011, to support their argument (*See* Doc. 25, p. 4), but Exhibit B is the Cumulative Counseling Summary and does not include a Bates 000011 (Doc. 25-2). Exhibit C includes all of the incident reports, but the reports at Bates 000010 and 000011 are missing from the record (Doc. 25-3).

12

investigation). Thus, the grievance served its purpose in notifying officials of Morris's issues with all of the involved officers, including Zang.

Finally, Defendants argue that Morris failed to properly exhaust his claims in Count 3 regarding the assault that allegedly occurred upon Morris's return to his cell. Defendants argue that Morris's grievance failed to specifically identify any officer who participated in the assault either by name or description. But again, the grievance officials were able to investigate Morris's claims, including the alleged assault based on the allegations in Morris's grievance. "A procedural shortcoming…amount[s] to a failure to exhaust only if prison administrators explicitly relied on the shortcoming." *See Maddox*, 655 F.3d at 722. At no time did grievance officials reject Morris's grievance because he failed to properly identify the officers involved in the alleged assault. Thus, the grievance exhausted Morris's claims in Count 3.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (Doc. 25) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: January 14, 2025**

*[signature: Nancy J. Rosenstengel]*

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**